IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GEORGE ANN THOMAS,

    Plaintiff,

vs.                                                CASE NO. 1:11-cv-72-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits and supplemental income benefits pursuant to Title II and XVI of the Social Security Act. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed concurrent applications for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI on August 22, 2007, claiming disability due to osteoarthritis and an injured left knee. (R. 48-66.) These applications were denied initially and upon reconsideration. (R. 48-66.) Following a hearing, an administrative law judge (ALJ) issued a decision unfavorable to Plaintiff on January 20, 2010. (R. 10-18.) The Appeals Council denied

Plaintiff's request for review on March 18, 2011.  (R. 1-4.)  On April 21, 2011, Plaintiff filed the instant appeal to this Court.  (Doc. 1.)

## II.  **FINDINGS OF THE ALJ**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009.  She further determined that Plaintiff had not engaged in substantial gainful activity since October 4, 2005. (R. 12.)  The ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the knees and obesity.  The ALJ went on to find at step three of the sequential evaluation that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (R. 13.)

With respect to Plaintiff's residual functional capacity at step four of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § § 404.1567(b).  She can occasionally lift 20 pounds; frequently lift 10 pounds; can sit, stand and walk 6 hours in an 8-hour work day; can frequently, but not continually, push or pull with the left leg; can occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; and should avoid concentrated exposures to vibration and work involving unprotected heights.  (R. 13.)  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they conflicted with the ALJ's RFC assessment.  (R. 14.)  The ALJ concluded at step four that Plaintiff was capable of

performing her past relevant work as a receptionist, cashier/checker, and short order cook. A vocational expert testified that an individual of the same age, education, and residual functional capacity as Plaintiff could perform her past relevant work. (R. 17-18.) The ALJ thus concluded that Plaintiff had not been under a disability at any time from October 4, 2005, through the date of his decision.

### III. ISSUES PRESENTED

Plaintiff argues that (1) the ALJ did not properly consider her obesity, and (2) substantial evidence does not support the ALJ's finding that she retained the RFC to stand and walk 6 hours per workday. (Doc. 17.)

### IV. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

*Case No. 1:11-cv-72-MP-GRJ*

the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted.)

*Case No. 1:11-cv-72-MP-GRJ*

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V. SUMMARY OF THE RECORD

### A. Medical History

Dr. Robert B. Balbis, D.O., saw Plaintiff on December 1, 2005. Plaintiff

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

presented for a recheck of her left knee pain, which she reported was improved following an injury at work, but with pain when squatting and twisting. Her edema had also improved. An MRI of the knee showed that all ligaments were intact; the menisci were intact; and there was no cruciate ligament instability. There was effusion of unknown origin. An x-ray showed some early degenerative disease. Dr. Balbis wrote a prescription for a left neoprene knee sleeve and recommended physical therapy. Dr. Balbis saw Plaintiff again on January 12, 2006, and while she had improved, he transferred her care to an orthopedic surgeon because she continued to have knee pain and might benefit from further diagnostic evaluation. On physical exam, Plaintiff had a mild antalgic gait with a little bit of pain over the lateral collateral ligament. Steinmann's test was negative, anterior and posterior drawers were negative, and her endpoints were stable. Dr. Balbis prescribed Percocet for pain because Plaintiff reported that Ultram did not help much. (R. 195, 197, 226.)

Dr. Phillip L. Parr, an orthopedic surgeon, evaluated Plaintiff on February 1, 2006. He noted that Plaintiff had been taking Celebrex and Percocet and had been on light duty, which involved standing but no climbing or stooping. She denied any symptoms in her right knee. On physical exam, her left knee showed mild effusion and full range of motion. There was moderate subpatellar crepitus bilaterally and her ligaments where stable. She had no joint line tenderness medially or laterally. X-rays showed small osteophytes at the edges of the patella in the left knee. Dr. Parr opined that Plaintiff had preexisting chondromalacia of the patellofemoral joints in both knees. She had acute synovitis secondary to her workers compensation injury, which

aggravated her degenerative patella.  Dr. Parr injected Plaintiff's left knee to help with her symptoms.  He opined that she could continue light duty with sedentary work but would be unable to return to her old position because it would require undue stress on her patellofemoral joints.  (R. 202-203.)

On August 14, 2007, Plaintiff was seen at Cross City Family Center, complaining of left knee pain that had flared up over the past month.  Her left knee was swollen and painful.  She had not taken her medications for the past three months because of warnings about Celebrex and financial issues.  On physical exam, her left knee showed abnormalities with joint line tenderness to palpation.  Her joint was boggy and edematous.  She was given prescriptions for pain medication.  (R. 205-206.)

Diagnostic imaging of the left knee taken December 19, 2007 showed a high-riding patella with no significant joint effusion.  Mild degenerative changes were noted, but overall joint spaces were well preserved and there were no acute abnormalities.  (R. 214.)

Dr. Robert A. Greenberg, M.D., examined Plaintiff on December 20, 2007.  Plaintiff complained of constant pain, stiffness, and swelling and that her left knee occasionally gives out on her, causing her to fall.  She reported using a cane to walk more than 20-30 feet, and said that she could not squat or kneel.  She stopped working as a general laborer in February 2006.  On exam, Plaintiff exhibited decreased range of motion in her left knee.  She had full range of motion of all other joints and the spine.  The left knee was warm and mildly swollen but not painful to palpation.  There was pain on range of motion of the left knee.  There was no other evidence of active,

inflammatory arthritis. There was decreased strength in both legs, measuring 4/5 due to bilateral knee pain. Plaintiff walked with a left leg limp but was able to do so without the use of a cane. She could not tandem walk, walk on her heels or toes, or stoop. Dr. Greenberg opined that Plaintiff probably had osteoarthritis of the knees, with the left knee worse than the right, aggravated by obesity. (R. 211-212.)

Dr. William Guy, M.D., examined Plaintiff on January 22, 2008. Her only complaint was bilateral knee pain. On exam, Plaintiff exhibited knee pain but no crepitus, swelling, heat, laxity or decreased range of motion. Plaintiff returned to Dr. Guy on December 31, 2008, complaining of swelling and pain in her right knee. Plaintiff reported that 3 days earlier, her left knee gave out and when she fell she struck her right knee on the ground. On exam, the right knee showed abnormalities with no swelling, effusion, abrasions, laxity or drawer signs. Range of motion was normal. Exam of the left knee was also unremarkable. Dr. Guy diagnosed compression arthralgia. Plaintiff was given a Toradol injection at the office and it was recommended that she use over-the-counter pain relievers if needed. Her previous acetaminophen-hydrocodone prescription was not refilled because there was no evidence of significant trauma or injury on exam. (R. 228-234.)

Dr. Donald Morford, M.D., completed a physical RFC on February 22, 2008. He opined that Plaintiff could lift 20 pounds occasionally and 10 founds frequently; stand, sit or walk 6 hours in an 8-hour workday; and had limitations in pushing and pulling with her lower extremities. He opined that Plaintiff can never climb ladders, ropes or scaffolds but can occasionally climb ramps/stars, balance, stoop, kneel, crouch and

crawl. She should avoid concentrated exposure to vibration and workplace hazards. Dr. Morford observed that weight loss and continued medical treatment should help Plaintiff's symptoms. (R. 215-222.)

Dr. Oscar B. DePaz, M.D., evaluated Plaintiff on October 19, 2009. Plaintiff described her pain as severe, 9/10. She described the pain as sharp, burning, toothache-like, stabbing, and throbbing, going down from her knees in to her calves and up into her thighs. Sitting, standing, walking, lifting, lying down and bending all made the pain worse. Over-the-counter ibuprofen sometimes made the pain better. Plaintiff reported severe pain in her knees after walking small distances and could not bend down on her knees on the floor due to pain. When sitting, her knees would lock up and she experienced burning pain into the thighs. Standing for less than 5 minutes caused her knees to lock up. She reported using a cane to ambulate. On physical exam, Dr. DePaz noted no pain behavior when sitting, but Plaintiff did exhibit pain behavior when changing positions or standing or walking, in the form of grimacing and posturing. Exam of the left knee revealed decreased range of motion, with flexion less than 70 degrees; fluid superior and lateral to the patella; and no erythema or warmth to touch. There was pain with pressure to the patella bilaterally; anterior/posterior drawer signs were negative. Dr. DePaz diagnosed chondromalacia patella of left knee; degenerative arthritis of the right knee, hypertension, and history of anemia. He recommended sedentary work with no jarring of the knees. Dr. DePaz encouraged the use of a cane, especially for any distance walking, and noted that treatment might include NSAIDs, narcotic pain medications, steroid injections, Synvisc injections and surgery. (R. 237-240.)

B.     **Hearing Testimony**

Plaintiff was 41 years old at the time of the November 16, 2009 hearing.  (R. 22.)  She testified that she completed the 12th grade.  She last worked in 2006, when she answered the phone in a doctor's office for about two months.  Prior to that, she worked in a factory that made veneer boards.  (R. 23.)  She sustained injury to her knees at that job during a workplace forklift accident.  (R. 24.)  She received workers compensation benefits for the injury and later, a $12,000 settlement.  (R. 24.)  Plaintiff testified that she also had prior work as a cashier/stock person, CNA, fry cook/prep person, and handling buckets of asphalt at an asphalt company.  (R. 25-26.)  She lives in house with her father.  (R. 26.)  Plaintiff testified that her 21-year-old son and occasionally her 17-year-old daughter also live in the one-story home.  Plaintiff testified that her mother had recently died, and that she had lived with her parents for six years.  She took care of her mother, who suffered from congestive heart failure and other ailments.  (R. 27.)  Until her knees really began bothering her, she would cook, clean, and drive her mother to appointments, but two years ago she had to have her sister begin helping care for their mother.  (R. 28.)

Plaintiff testified that she has not had surgery on her knee; she has been told she is too young and has to wait another 10 years for knee replacement.  She has, however, received injections in both of her knees.  Plaintiff testified that she had not returned to Dr. Guy because she could not afford it.  (R. 28.)   For relief, she would elevate her knee, use a heating pad, and take Tylenol and a prescription medication for pain and inflammation.  She uses a cane all the time.

Around the house, she can make a sandwich, wash dishes, dust a little, put

laundry in the washer, and fold clothes. She can't sweep or vacuum. (R. 29.) She can grocery shop if the store has a scooter and can only walk a few minutes before she has to sit down. Plaintiff testified it takes her about a minute to stand up, and then she can only stay standing for about 5 minutes. She estimated she could lift about 10 pounds at a time. She has problems with sitting–her lower back aches, her knee throbs, and she has shooting pains up the back of her knee. (R. 30.) Plaintiff testified that she can comfortably sit for about 10 minutes at a time without shifting. She is anemic and has suffered from arthritis in her hands for the past two years. Her lower back problems have occurred for the past year. (R. 31.)

Plaintiff testified that her pain remains at the same level–severe–most of the time. It drops to moderate only when she takes a pain reliever or heating pad and sleeps. Her pain can increase to a severe level from walking, standing, or sitting upright. She testified that her pain interferes "greatly" with her ability to concentrate and it takes her a long time to perform tasks. (R. 33.) She elevates her leg at least 16 hours a day to alleviate swelling and pain, while she is sitting and lying down. (R. 34.) When she elevates her leg, she uses a stool, recliner, and sometimes pillows. (R. 37.) She testified that her pain also affects her ability to handle stress and caused her to be on edge and feel agitated. She has problems with balance and requires a shower chair to take a shower. (R. 35.) She cannot reach very far and has problems working with small objects such as buttons. (R. 36.)

A vocational expert (VE), V. David Pigue, also testified at the hearing. Mr. Pigue testified that Plaintiff's past work experience was as a cashier (two), box maker, nurse assistant, receptionist, cashier checker, short order cook, and fast foods worker. (R.

38-41.)  The ALJ posed a hypothetical to the VE assuming an individual with limitations of occasionally lifting 20 pounds; frequently lifting 10 pounds; sit, stand or walk for 6 hours in an 8-hour day; frequently, but not continually, push or pull with the left leg; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; and avoid concentrated exposure to vibration and work on unprotected heights.  (R. 41.)  Based on the hypothetical and assuming an individual with the same age, education, and past relevant work as Plaintiff, the VE testified that the individual would be able to perform light work, including the positions of cashier (two), cashier/checker, fast foods workers, receptionist, and short-order cook.  (R. 41-42.)  The ALJ asked the VE to assume further limitations of brief periods of standing and walking for no more than a total of 2 hours in an 8-hour workday.  The VE testified that the additional limitations would rule out all positions except cashier (two) and receptionist.  (R. 42.)  The cashier (two) position could be performed to account for the standing and walking limitations in settings such as cafeterias, mall kiosks, parking lots, box offices, and garages.  (R. 43.)

## VI.  DISCUSSION

Plaintiff argues that (1) the ALJ did not properly consider her obesity, and (2) substantial evidence does not support the ALJ's finding that she retained the RFC to stand and walk 6 hours per workday.  (Doc. 17.)

### The ALJ Properly Considered Plaintiff's Obesity

Plaintiff contends that the ALJ failed to properly follow Social Security Ruling 02-1p in assessing Plaintiff's RFC.  That SSR guides the evaluation of obesity in disability

claims, and was published following the deletion of Listing 9.09, Obesity, from the Listing of Impairments.  *See* 67 Fed. Reg. 57859, 57860-61 (Sept. 12, 2002).  The SSR recognizes that obesity is a risk factor that increases the chance of developing impairments in other body systems, including the cardiovascular, respiratory, and musculoskeletal body systems.  *Id*.  The SSR provides that the ALJ should consider the effect of obesity at each step of the sequential evaluation:

> [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately....  [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Id*. at 57861-62.

Plaintiff asserts that the ALJ's discussion of Plaintiff's obesity "was plainly insufficient" and argues that this case should be remanded with directions to the Commissioner to provide a specific discussion of her obesity as contemplated by Social Security Ruling 02-1p.  (Doc. 17.)

The ALJ found that Plaintiff's obesity was a severe impairment at step two of the sequential analysis.  Further, in evaluating Plaintiff's RFC at step four, the ALJ specifically noted that she took into account the effects of Plaintiff's obesity and the effects of her obesity in combination with her degenerative joint disease.  The ALJ expressly took into account the functional limitations that can result from obesity, such as limits in exertional and postural functions as well as the ability to manipulate and tolerate extreme heat, humidity or hazards.  The ALJ also considered Dr. Greenberg's

opinion that Plaintiff's osteoarthritis of the knees was aggravated by her obesity and Dr. Morford's note that weight loss should help with Plaintiff's symptoms. (R. 17.) The ALJ's RFC determination accounted for Plaintiff's obesity and her other impairments by limiting Plaintiff to light work with additional postural and environmental limitations. (R. 13.)

Accordingly, the record supports a conclusion that the ALJ fully and properly considered Plaintiff's obesity, and the functional limitations arising therefrom, in combination with Plaintiff's other impairments in evaluating her RFC. As such, Plaintiff's argument that the ALJ erred by failing to address Plaintiff's obesity as required by the Social Security Ruling has no merit.

### The ALJ's RFC Evaluation and Finding that Plaintiff Could Perform Past Relevant Work are Supported by Substantial Evidence

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § § 404.1567(b). She can occasionally lift 20 pounds; frequently lift 10 pounds; can sit, stand and walk 6 hours in an 8-hour work day; can frequently, but not continually, push or pull with the left leg; can occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; and needs to avoid concentrated exposures to vibration and work involving unprotected heights. (R. 13.)

The ALJ assigned great weight to the opinion of examining orthopedic surgeon Dr. Parr, who concluded that Plaintiff had a full range of motion, all ligaments were stable and he did not observe any joint line tenderness either medially or laterally. Although Dr. Parr concluded that Plaintiff could continue light duty with sedentary work but would unable to return to her old position because it would require undue stress on

her patellofemoral joints.[21] (R. 16, 202-203) The ALJ assigned significant weight to the opinion of Dr. Morford, who opined that Plaintiff could lift 20 pounds occasionally and 10 founds frequently; stand, sit or walk 6 hours in an 8-hour workday; and had limitations in pushing and pulling with her lower extremities. He opined that Plaintiff can never climb ladders, ropes or scaffolds but can occasionally climb ramps/stars, balance, stoop, kneel, crouch and crawl.  She should avoid concentrated exposure to vibration and workplace hazards.  Dr. Morford observed that weight loss and continued medical treatment should help Plaintiff's symptoms.  (R. 16, 215-222.)

The ALJ also noted that the medical evidence of record fails to show significant forms of treatment such as surgery or hospitalization; diagnostic findings have largely been unremarkable; physical examination of Plaintiff's knees have generally shown little to no decrease in range of motion, swelling, effusion, laxity or drawer signs; and Plaintiff does not take prescription medication for her pain.  In support of his assessment, the ALJ also pointed to evidence that Plaintiff worked after her alleged onset date. While the ALJ properly noted that these activities were not disqualifying because it constituted an unsuccessful work attempt, the unsuccessful work attempt did show that her "daily activities, at least at times, have been somewhat greater than the claimant has generally reported."  (R. 16.)  Lastly, according to Plaintiff's own testimony, her activities of daily living include washing dishes, doing laundry, dusting, preparing simple meals, and grocery shopping with a scooter, activities the ALJ concluded further supported his

---

[21] As Plaintiff correctly points out light duty is different from light work. However, Dr. Parr's limitation that Plaintiff could continue with light duty with sedentary work but not her previous job, referred to Plaintiff's last job working at a veneer factory, which required Plaintiff to stand on a pallet elevated by a forklift. The ALJ did not find – and the VE did not testify – that Plaintiff could perform her past relevant work in the veneer factory.

Case No. 1:11-cv-72-MP-GRJ

RFC assessment. (R. 29-30.)

The Court concludes that the ALJ's assessment of Plaintiff's RFC, which includes a determination that Plaintiff can stand or walk 6 hours in an 8-hour workday, is supported by substantial evidence.

After determining Plaintiff's RFC in light of her limitations, medical evidence, and her credibility, the ALJ included these limitations in a hypothetical question to a VE. The VE testified that Plaintiff could perform her past relevant work as a cashier/checker, fast foods workers, receptionist, and short-order cook.  (R. 41-42.)  The VE testified that the position of receptionist required a sedentary level of exertion, while the other three positions required a light level of exertion. The ALJ then asked the VE to assume further limitations of brief periods of standing and walking for no more than a total of 2 hours in an 8-hour workday, and the VE testified that the additional limitations would rule out all positions except receptionist.  (R. 42.) Thus, even if Plaintiff was more limited in standing and walking, as Plaintiff contends – and was further limited to sedentary work –  the VE testified that Plaintiff could still perform past relevant work as a receptionist. A claimant is not disabled where the claimant has the residual functional capacity to do either the specific work as he or she performed it or as the work is generally performed in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(iv)(f); 416.920(a)(4)(iv)(f). Consequently, because the ALJ found that Plaintiff can perform at least one of her jobs that qualify as past relevant work, as the that job is generally performed in the national economy, the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence of record.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in

finding that Plaintiff was not disabled because his determination at step four that Plaintiff could perform past relevant work is supported by substantial evidence.

## VII.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 2nd day of April 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**